IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HEATHER K. TEAGUE,
Plaintiff,
v.

Civil Action No. 3:26-cv-906

OPTUM SERVICES, INC.,
UNITEDHEALTH GROUP INCORPORATED and
UNITEDHEALTHCARE SERVICES, INC.,
**SERVE: Registered Agent**
**United Agent Group Inc.**
**425 W Washington Street, Suite 4**
**Suffolk, VA, 23434-5320**

Defendants.

JURY TRIAL
DEMANDED

COMPLAINT

Plaintiff Heather K. Teague ("Teague"), by counsel, brings this action against Defendants Optum Services, Inc., UnitedHealth Group Incorporated, and UnitedHealthcare Services, Inc. (collectively, "Defendants"), and alleges as follows:

NATURE OF THE ACTION

1. This is an action for disability discrimination, failure to provide reasonable accommodation, and retaliation in violation of Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), 42 U.S.C. §§ 12111–12117, and the ADA's anti-retaliation provision, 42 U.S.C. § 12203.

2. Plaintiff has post-traumatic stress disorder ("PTSD"), an immunodeficiency condition, insomnia, and other physical and mental impairments. Defendants knew of Plaintiff's disabilities and disability-related limitations through medical-leave documentation, disability-benefit records, medical-provider accommodation forms, and direct communications with Plaintiff.

3. Plaintiff requested accommodations that would enable her to return to work, including work breaks, additional time for tasks, time for medical appointments or intermittent health-related absences, and a work arrangement outside the management team whose involvement her provider identified as medically harmful. Defendants approved some requested measures but declined the management-structure request and did not identify or implement a workable alternative placement or reporting arrangement before requiring Plaintiff to return under the disputed arrangement.

4. Defendants terminated Plaintiff while her requested accommodation remained disputed, after learning that she could not return full time under Defendants' imposed conditions.

5. Plaintiff seeks all legal and equitable relief available under the ADA, including back pay, front pay or reinstatement, compensatory damages for emotional harm and damage to her work record and professional reputation, punitive damages, attorney's fees, costs, and appropriate equitable relief.

JURISDICTION and VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12117(a).

7. This Court has supplemental jurisdiction over Plaintiff's claims under the Virginia Human Rights Act, Va. Code § 2.2-3900 et seq., pursuant to 28 U.S.C. § 1367 because those claims arise from the same employment relationship, accommodation process, leave process, adverse actions, and termination as Plaintiff's federal claims.

8. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a), because the unlawful employment practices alleged occurred in this District and Plaintiff worked in this District.

9. Plaintiff timely exhausted her administrative remedies. On or about March 27, 2025, Plaintiff filed EEOC Charge No. 438-2025-01273 against Optum, Inc./UnitedHealthcare, alleging disability discrimination, failure to accommodate, retaliation, and related conduct. The EEOC issued a Determination and Notice of Rights on June 8, 2026. This action is filed within ninety days after Plaintiff's receipt of that Notice.

THE PARTIES

10. Plaintiff Heather K. Teague is an individual who resided and worked in Henrico County, Virginia, during the events at issue.

11. Defendant Optum Services, Inc. ("Optum") employed Plaintiff as a Senior UX/CX Designer/Researcher, exercised control over material terms and conditions of her employment.

12. Defendant UnitedHealth Group Incorporated ("UHG") is an employer within the meaning of 42 U.S.C. § 12111(5) or acted as a joint employer and/or integrated enterprise with UHC and Optum. UHG's Disability and Leave Services made or participated in material decisions concerning Plaintiff's leave and accommodation process. The August 19, 2024 termination notice expressly states that UHG determined Plaintiff's employment would be administratively terminated effective that day.

13. Defendant UnitedHealthcare Services, Inc. ("UHC") is an employer within the meaning of 42 U.S.C. § 12111(5) or acted as a joint employer and/or integrated enterprise with Optum and UHG. UHC participated in, controlled, or had authority over Plaintiff's employment, workplace management, accommodation process, and termination.

14. Defendants operated with centralized human-resources, disability-management, leave-administration, accommodation-review, and employee-relations functions. Decisions

regarding Plaintiff's leave, accommodations, return-to-work process, and termination were coordinated among personnel acting on behalf of UHC, Optum, and UHG.

15. Defendants shared and exercised authority over material terms and conditions of Plaintiff's employment, including leave administration, accommodation determinations, return-to-work decisions, and termination decisions, and therefore operated as joint employers and/or an integrated enterprise.

16. At all relevant times, each Defendant employed at least fifteen employees and was a covered entity under the ADA. Each Defendant also employed more than five employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and was an employer within the meaning of the Virginia Human Rights Act.

## FACTUAL ALLEGATIONS

17. Defendants hired Plaintiff on or about May 4, 2022, as a Senior UX/CX Designer/Researcher. Her start date was May 23, 2022.

18. Plaintiff worked remotely from Virginia and performed research, design, analysis, reporting, and collaborative product-team work.

19. During 2023, Plaintiff performed challenging research assignments and was asked to share specialized skills and experience with members of her team. Before the events described below, Plaintiff received positive feedback that she was making sound strategic decisions and was assigned work involving difficult internal clients and research problems. Plaintiff had no formal written disciplinary warning, final warning, suspension, or Corrective Action Plan before taking leave.

20. On or about February 22, 2023, Plaintiff's managing supervisor, Associate Director Jenna Weiss, reviewed Plaintiff's 2022 annual performance evaluation with her. Plaintiff

received ratings of 3 or higher in each category. Plaintiff was also informed that she would receive a salary increase effective February 26, 2023 and a bonus for her 2022 work.

21. In or about June 2023, Plaintiff informed Weiss and Director of UX Research Kristan Hodge that she had PTSD and requested that she not be assigned to work involving the substance-abuse team because of the anticipated effect on her condition. Plaintiff advised that, if an alternative assignment could not be arranged, she would need to begin the formal accommodation process. Hodge thereafter assigned Plaintiff to work with the Optum Financial Services team. Plaintiff alleges that the management criticism, scapegoating, and performance-related accusations described below began after that assignment.

22. During September and November 2023, Plaintiff experienced conflicts with members of management concerning project assignments, project information, billing codes, and the handling of workplace concerns. On September 20, 2023, Plaintiff alleges that Rob Maahs-Henderson verbally attacked and scapegoated her in a project meeting attended by Kate Muelle. On November 20, 2023, Plaintiff alleges that Maahs-Henderson and Plaintiff's managing supervisor, Jenna Weiss, again blamed Plaintiff for project problems while failing to address impediments to the work. Andrew Marley attended that meeting.

23. After the November 20 meeting, Plaintiff promptly told Weiss that the treatment she received was not acceptable. Weiss apologized and acknowledged that she and Maahs-Henderson had been overworked and that she had not adequately tracked Plaintiff's project. Weiss further stated that Plaintiff had been making sound decisions and regularly keeping her informed about the project. Weiss also agreed to help Plaintiff address Maahs-Henderson's conduct.

24. Defendants now rely on a 2023 Common Review attributed to Weiss that bears a review date of February 25, 2024 and assigns Plaintiff a composite rating of 2, or "Needs Improvement." The review states that Plaintiff did not provide a self-evaluation to accompany the rating. Plaintiff did not receive the completed review, did not submit a self-evaluation, did not sign or comment on the review, and did not receive a Corrective Action Plan before taking leave or before her employment was terminated. Defendants also contend that Weiss contacted Human Resources in November 2023 concerning a proposed Corrective Action Plan.

25. On or about November 27, 2023, Weiss and Plaintiff met with Director of UX Research Kristan Hodge. Plaintiff alleges that Weiss then stated that she agreed with Maahs-Henderson's treatment of Plaintiff and his attribution of project problems to Plaintiff. Hodge stated that she had received allegations that Plaintiff was not producing actionable research data quickly enough for the Optum Financial Services team. When Plaintiff asked the source of those allegations, Hodge identified Cindy Tam and Andre Dykhno. Plaintiff responded that she had initiated and pursued research work for the team but was awaiting information, approvals, or preliminary research from others before she could proceed.

26. On December 1, 2023, Plaintiff reported to Hodge that the November 27 meeting and Weiss's reversal of her prior apology had exacerbated Plaintiff's PTSD symptoms and impaired her ability to function. Plaintiff also contacted the Company's Ethics and Compliance Hotline and Employee Center to ask about reporting the conduct of Weiss, Maahs-Henderson, and Hodge. The Employee Center opened Ticket No. HRC013661953 seeking assistance about reporting Code-of-Conduct concerns.

27. On or about December 4, 2023, Hodge told Plaintiff that management had requested her removal from the Optum Financial Services team based on an assertion that Plaintiff had not

provided actionable data quickly enough. Hodge instructed Plaintiff that Weiss would assign her another project involving fewer people and obstacles. Hodge further told Plaintiff that she was required to continue meeting with Weiss despite Plaintiff's reports of the prior treatment and concerns about her safety. Hodge characterized Plaintiff's trauma-related symptoms as performance issues that required correction.

28. In early December 2023, Plaintiff became ill, began exploring medical leave, and sought disability-related benefits and leave. While Plaintiff was arranging leave, Weiss told Plaintiff that she needed to commence leave within approximately two days. Plaintiff was informed by Human Resources and Sedgwick, the leave administrator, that the asserted two-day deadline did not govern her leave options.

29. Sedgwick instructed Plaintiff to complete required timekeeping entries before beginning leave so that her pay and benefits could be properly processed. Defendants used separate systems for payroll timekeeping and project billing/accounting timekeeping. Plaintiff alleges that Weiss entered Plaintiff's sick time as unpaid leave in the payroll system despite Plaintiff's available paid-time-off balance, while refusing to restore Plaintiff's access to the project billing/accounting system so that Plaintiff could complete required entries.

30. On December 13, 2023, while arranging to take leave, Plaintiff notified Human Resources that management conduct was interfering with the process and making her sicker. Plaintiff also raised concerns regarding retaliation, pay, paid-time-off coding, benefits, timekeeping, and the handling of workplace complaints.

31. Plaintiff did not receive a completed annual review, a "Needs Improvement" rating, or a Corrective Action Plan before taking leave. Plaintiff also was not provided a meaningful opportunity to review, comment on, or respond to the alleged performance deficiencies through

the annual-review process before she began leave or before Defendants terminated her employment.

32. The Common Review on which Defendants rely was prepared without Plaintiff's self-evaluation or comments and attributes several alleged performance and workplace-conduct deficiencies to Plaintiff. The review also acknowledges that Plaintiff was assigned challenging projects and describes Plaintiff as a talented researcher with substantial experience and potential. Plaintiff disputes the asserted performance deficiencies and alleges that management failed to give her a meaningful opportunity to respond to them before leave or termination.

33. Before taking leave, Plaintiff reported to Lauren Finley in the Employee Center and to Human Resources that she believed management was unfairly blaming her for project problems, mischaracterizing her performance and workplace conduct, and potentially incorporating those accusations into her pending annual review. Plaintiff expressed concern that management's evaluation could affect her compensation and that she would face retaliation for reporting management conduct and seeking leave. Plaintiff made those reports on or about December 12, 2023, and in subsequent communications while seeking leave and disability-related assistance.

34. On January 5, 2024, Plaintiff's psychologist, Dr. Patricia Koch, provided the leave administrator documentation identifying Plaintiff's chronic PTSD and explaining that Plaintiff's work environment had increased her PTSD symptoms and caused a flare of her autoimmune condition. Dr. Koch reported that Plaintiff experienced physical pain, low endurance, brain fog, and infections; was unable to open work emails or attend meetings because she was triggered by work dynamics and lack of support; and needed disability leave. Dr. Koch further explained that

Plaintiff's chronic PTSD and autoimmune condition could be debilitating when Plaintiff was triggered and her symptoms flared.

35. In January 2024, Dr. Koch requested an extension of Plaintiff's disability leave through March 18, 2024. Dr. Koch also advised the leave administrator that inconsistent information regarding claim deadlines and difficulty obtaining answers about the leave process had exacerbated Plaintiff's PTSD symptoms and interfered with her recovery.

36. Plaintiff began working reduced or intermittent hours in early December 2023 and began a continuous leave of absence on or about December 20 or 21, 2023. Plaintiff alleges that Defendants' leave records reflected inconsistent start dates, including dates attributed to Weiss, which caused or contributed to discrepancies in Plaintiff's leave, pay, and benefits records. The UnitedHealth Group Disability and Leave Service Center's June 7, 2024 notice stated that Plaintiff's STD benefits had been approved through June 3, 2024 and that she had reached the stated 180-day maximum benefit period. Plaintiff disputes the accuracy of that calculation and alleges that Defendants did not correct the resulting pay-and-benefit discrepancies.

37. Through a Sedgwick-administered leave process and UHG's Disability and Leave Service Center, Plaintiff's leave and disability information was received and processed beginning in December 2023. Plaintiff repeatedly requested leave policies, protocols, timelines, and deadline information so that she and her providers could timely submit and maintain paperwork required for continued leave and benefits. Defendants allegedly declined to provide the requested company policies on the ground that Plaintiff was on leave. Defendants therefore had direct notice of Plaintiff's disability-related limitations, accommodation needs, and need for an orderly, adequately communicated return-to-work and leave process well before the August 2024 termination.

38. When Plaintiff's STD benefits ended in June 2024, Plaintiff faced a gap in disability-related income. The UnitedHealth Group Disability and Leave Service Center' June 7, 2024 notice stated that an LTD claim had been initiated on Plaintiff's behalf, but Plaintiff alleges that she lacked the policies, procedural information, and assistance necessary to ensure timely processing of the claim and continuation of benefits. Plaintiff alleges that the LTD administrator did not approve her claim until mid-August. During the intervening period, Plaintiff alleges that she received no disability-related income, was subjected to unexplained direct-benefit billing, and was threatened with retroactive loss of benefits or coverage.

39. On June 10, 2024, Sedgwick informed Plaintiff that, based on provider recommendations it had received, it was forwarding her accommodation case to UnitedHealth Group Disability and Leave Services within the Employee Center for further handling. Plaintiff objected in writing to the transfer because she had been told Sedgwick would negotiate her return-to-work arrangements while bypassing the management team whose involvement aggravated her disability-related symptoms; Plaintiff further warned that management involvement would expose her to reprisals. Sedgwick stated that a DLS representative would be assigned and would work with Plaintiff regarding accommodations going forward.

40. Plaintiff submitted and pursued complaints concerning management, leave, timekeeping, pay, benefits, and the accommodation process. Before Plaintiff agreed to file a formal complaint, Lauren Finley in Employee Relations advised Plaintiff that the persons Plaintiff complained about would not be informed of or involved in the mitigation or resolution process and that the Company would seek resolution through persons above those involved. Finley further advised Plaintiff that, if she received a rating of 2 or below on her then-pending 2023 annual performance review and believed the rating did not accurately reflect her work,

Employee Relations could review the rating after annual reviews were released and could intervene if appropriate.

41. After Plaintiff agreed to file a formal complaint based on those assurances, Finley transferred the matter to a team handling complaints about management, and Wendy Gatewood thereafter handled Plaintiff's complaint. Gatewood told Plaintiff that the Company did not hold the managers accountable "because of who they are" and insisted that the only remedy she would offer was a meeting with the managers whose conduct Plaintiff had reported, despite Plaintiff's explanation that she had already exhausted efforts to resolve the problems by speaking with those managers. Plaintiff objected to Gatewood's involvement and requested a different representative.

42. In June 2024, Plaintiff reported management, Human Resources, payroll, leave, and accommodation-process concerns through Defendants' supposedly confidential Compliance and Ethics HelpCenter. Plaintiff's June 20, 2024 report identified, among other concerns, that Gatewood was involved in reviewing accommodation requests. Plaintiff requested that Gatewood not participate in decisions concerning Plaintiff's accommodations.

43. Defendants redirected the Ethics report to the Employee Center for handling. Plaintiff reasonably believed that persons whose conduct she had reported could thereby have access to or influence over the handling of her complaints and accommodation process.

44. In May 2024, Plaintiff contacted Stoesz at the direction of Human Resources and Payroll to address unresolved compensation issues and to discuss possible arrangements for Plaintiff's anticipated return to work. Plaintiff sought a discussion concerning possible accommodations, as well as unresolved location-based and equity-pay requests and her 2023 bonus. Stoesz asked Plaintiff to provide the information by email. Plaintiff did so, but Stoesz did

not substantively address Plaintiff's proposed return-to-work arrangements and instead directed the matters back to Human Resources.

45. By no later than June 6, 2024, Plaintiff and her health-care providers informed Sedgwick and UHG's Disability and Leave Services that Plaintiff sought accommodations to enable a return to work. A provider recommendation characterized Plaintiff's medical condition as ongoing or indefinite and recommended reassignment to a different manager and team, additional time to complete analytical work, a low-stress work arrangement, additional breaks, and time for medical appointments and related treatment. The provider further identified less demanding work and a calm work environment as alternatives if the requested management-related arrangement could not be provided.

46. On June 19, 2024, Plaintiff directly confirmed that she needed to be assigned to a new management team in order to stay well. Plaintiff's provider documentation and communications explained that exposure to the identified management team triggered Plaintiff's disability symptoms, worsened her health, and impaired her ability to function.

47. Plaintiff was not seeking a preferred supervisor, relief from ordinary workplace stress, or authority to select her management personnel. Rather, Plaintiff's treating providers advised Defendants that exposure to the identified management structure triggered Plaintiff's PTSD symptoms, exacerbated her physical and mental impairments, and substantially interfered with her ability to return to work successfully. Plaintiff therefore sought reassignment, transfer to a different team, an alternative reporting relationship, less demanding work, a part-time or otherwise modified return-to-work arrangement, or another organizational arrangement that would permit her to perform work while avoiding a medically identified trigger to her disabilities.

48. Plaintiff did not request to be excused from performing the essential functions of her position. Plaintiff believed and informed Defendants that, with reasonable accommodation, she could perform the essential functions of employment through a part-time or otherwise modified return-to-work schedule, reassignment or placement on a different team, an alternative reporting relationship, additional time for tasks, breaks, time for medical care, or other effective accommodations. Plaintiff sought an effective work arrangement that would eliminate a known disability-related barrier to work and permit her to perform research, design, analysis, reporting, and collaborative functions.

49. Defendants discussed Plaintiff's accommodation and return-to-work requests with her in June and July 2024. On or about July 23, 2024, Plaintiff met with Jared Carr and Human Resources personnel. Before the meeting, Tailar Lacey, a Disability Specialist, had advised Plaintiff that the meeting would concern investigation of Plaintiff's Ethics and Compliance report rather than a decision concerning Plaintiff's accommodation or return to work.

50. During the July 23 meeting, Plaintiff advised Carr and Human Resources personnel that she could not return to work under the same management team because that management structure triggered her PTSD and autoimmune symptoms. Plaintiff stated that she could work on another team and was willing to consider a part-time return, other roles, placements, or other workable arrangements. At Carr's request, Plaintiff provided her résumé to assist in considering options outside her prior work group.

51. During the accommodation process, Plaintiff remained willing to consider a range of accommodations, including reassignment to a vacant position, placement on a different team, alternative reporting relationships, part-time return-to-work arrangements, temporary assignments, or other reasonable accommodations that would enable her to resume productive

employment. Plaintiff repeatedly communicated her desire to return to work as soon as an effective accommodation could be implemented.

52. On July 29, 2024, Carr sent Plaintiff an agenda for a meeting addressing return-to-work expectations and accommodation communications. Carr included Anna Stoesz, the leader replacing Plaintiff's prior director, as a prospective participant.

53. Plaintiff objected to Stoesz's participation because the provider-directed accommodation required Plaintiff to work under a different management team. Plaintiff had previously sought Stoesz's assistance concerning possible return-to-work arrangements in May 2024 and reasonably believed that Stoesz had not addressed those concerns. Plaintiff explained that involvement with Stoesz's team would trigger her symptoms, put her health at risk, and make it impossible for her to function well. Plaintiff again requested that Defendants consider creative ways to return her to work as soon as possible.

54. After receiving Plaintiff's objection, Carr cancelled or delayed the July 29 meeting. Plaintiff's explanation gave Defendants further notice that the disputed management structure was central to her provider-supported accommodation request.

55. On July 29, 2024, Disability and Leave Services issued Plaintiff a Reasonable Medical Accommodation Response by email. The response approved exclusion from projects focusing on mental-health initiatives, brief breaks as needed during the workday, deadline extensions when business needs allowed, and up to two health-related absence days per month. The response also provided that, for three months after Plaintiff returned from leave, a second member of management would participate in scheduled one-on-one meetings with Plaintiff's immediate supervisor. The response did not approve reassignment, a different management team, an alternative reporting structure, less demanding work, or a part-time return arrangement.

56. Defendants did not identify or provide Plaintiff with an alternative placement, reassignment opportunity, different reporting structure, temporary assignment, trial accommodation, part-time arrangement, or other effective work arrangement before the return-to-work deadline. In the July 29 response, Disability and Leave Services stated that working with peers and management assigned based on business needs was an essential job function and that there were no vacant positions reporting to other management within Plaintiff's current business area for which she was qualified. Plaintiff alleges that Defendants did not adequately evaluate feasible alternatives outside that asserted limitation, including alternative reporting arrangements, temporary assignments, less demanding work, a part-time return, or other work that would address the provider-supported restrictions.

57. On July 30, 2024, Plaintiff provided Carr a copy of a benefits bill and sought assistance regarding unresolved leave, benefits, and return-to-work issues. Carr directed Plaintiff to an online employee-help form. On July 31, 2024, Carr asked Plaintiff to review the July 29 accommodation letter and identify a return-to-work date before August 12, 2024. Plaintiff replied that the referenced form was inaccessible to her because it was behind the Company's security system and did not address the specific unresolved issues concerning her benefits, job situation, and medically supported return-to-work accommodation.

58. Rather than resolve the dispute over an effective return arrangement, Defendants required Plaintiff to return under their selected accommodations by August 12, 2024.

59. UHG's Disability and Leave Services knew that Plaintiff remained unable to return to full-time work under the proposed arrangement. On or about August 12, 2024, Plaintiff's psychologist, Dr. Patricia Koch, informed Defendants that Plaintiff was unable to return to full-time work because of her physical and psychological disabilities. Dr. Koch stated that the

requested accommodation was a part-time return to work under different management while Plaintiff continued pursuing long-term disability benefits, and that Defendants' July 29 accommodation response did not provide the requested part-time return, different-management arrangement, or another effective alternative addressing the provider-supported restrictions.

60. On or about August 14, 2024, Defendants disabled Plaintiff's work-computer access.

61. On August 19, 2024, UnitedHealth Group determined that Plaintiff's employment would be administratively terminated, effective that date. The termination notice, issued through the Employee Center and signed by Jessica Pettingill, a Disability & Leave Services Consultant, stated that, "[b]ased on business needs," the Company could no longer accommodate Plaintiff's ongoing leave because Plaintiff had not returned to work. The notice also characterized Plaintiff's leave as a reasonable accommodation. Plaintiff disputes that characterization because her post-FMLA short-term-disability leave and benefits were separately evaluated and approved by Sedgwick.

62. Defendants' stated explanation is pretextual. Defendants imposed a return-to-work requirement while declining the provider-supported management-related accommodation; did not identify or implement a workable alternative before the deadline; proceeded despite current medical information; and terminated Plaintiff shortly after her accommodation requests, disability-related complaints, and opposition to the proposed return arrangement. Defendants also allegedly failed to provide Plaintiff and her treating provider the policies, procedures, and deadlines necessary to timely manage the transition from short-term to long-term disability leave, even as Plaintiff faced a lapse in disability-related income and uncertainty about continued benefits.

63. At all relevant times, Defendants possessed medical documentation and direct communications establishing that Plaintiff sought to return to work, that she could perform the essential functions of employment with reasonable accommodation, and that Plaintiff's treating providers considered separation from the identified management structure medically necessary. Nevertheless, Defendants refused to implement an effective accommodation or workable alternative and proceeded with termination despite their knowledge of Plaintiff's protected rights under the ADA.

64. Defendants' actions caused Plaintiff lost wages, loss of employment opportunity, and loss of employer-sponsored benefits, including the loss of active-employee health coverage and the resulting need to consider continuation coverage at her own expense. Plaintiff also suffered emotional pain, suffering, inconvenience, mental anguish, damage to her work record and professional reputation, and other compensatory damages.

65. Plaintiff alleges that Defendants acted with reckless indifference to her federally protected rights by disregarding medically supported accommodation restrictions and terminating her employment before implementing an effective accommodation. Despite possessing medical documentation supporting Plaintiff's disabilities and accommodation requests, Defendants disregarded known disability-related restrictions, failed to provide an effective accommodation, failed adequately to evaluate reasonable alternatives, and terminated Plaintiff while accommodation issues remained unresolved.

## COUNT I
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION
## Americans with Disabilities Act, 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A)

66. Plaintiff incorporates by reference Paragraphs 1 through 65.

67. Plaintiff is an individual with a disability within the meaning of the ADA. Her physical and mental impairments substantially limited one or more major life activities, including concentrating, thinking, communicating, interacting with others, sleeping, working, and the operation of major bodily functions.

68. Defendants knew of Plaintiff's disabilities and disability-related limitations.

69. Plaintiff was qualified for her position because, with reasonable accommodation, she could perform its essential functions.

70. Plaintiff requested reasonable accommodations, including work breaks, additional time for tasks, time for medical care, and an effective management, reporting, or work-team arrangement that would eliminate a disability-related barrier to work.

71. Defendants failed to provide Plaintiff with a reasonable accommodation. Although Defendants approved certain measures, those measures did not address the disability-related barrier to work identified by Plaintiff and her treating providers and therefore were not effective accommodations.

72. Defendants further failed to engage in the interactive process by failing adequately to evaluate and implement alternative accommodations, including reassignment, transfer, alternative reporting relationships, temporary assignments, or other available accommodations that would have enabled Plaintiff to return to work and perform the essential functions of employment.

73. As a direct and proximate result, Plaintiff has suffered and will continue to suffer damages.

74. Defendants' conduct was intentional and undertaken with malice or reckless indifference to Plaintiff's federally protected rights under the ADA.

## COUNT II
## DISABILITY DISCRIMINATION and DISCRIMINATORY DISCHARGE
## Americans with Disabilities Act, 42 U.S.C. § 12112(a)

75. Plaintiff incorporates by reference Paragraphs 1 through 74.

76. Plaintiff was a qualified individual with a disability because she possessed the requisite skills, experience, education, and training for her position and, with reasonable accommodation, could perform the essential functions of her position and sought consideration for reassignment opportunities that might have permitted her return to work.

77. Defendants discharged Plaintiff and otherwise adversely affected the terms, conditions, and privileges of her employment.

78. Plaintiff's disability was a but-for cause of Defendants' adverse actions, including their handling of her return-to-work process and her termination.

79. Defendants' asserted reason for termination—that Plaintiff did not return to work by the date Defendants selected—is unworthy of credence and pretextual because Defendants imposed that requirement without providing an effective reasonable accommodation or adequately evaluating and implementing available alternatives.

80. As a direct and proximate result of Defendants' disability discrimination, Plaintiff has suffered and will continue to suffer damages.

81. Defendants' conduct was intentional and undertaken with malice or reckless indifference to Plaintiff's federally protected rights under the ADA.

COUNT III
RETALIATION and RETALIATORY DISCHARGE
Americans with Disabilities Act, 42 U.S.C. § 12203(a)

82. Plaintiff incorporates by reference Paragraphs 1 through 81.

83. Plaintiff engaged in protected activity by requesting reasonable accommodations for her disabilities; submitting medical documentation supporting those accommodations; opposing Defendants' refusal to provide effective accommodations; communicating concerns that Defendants' actions interfered with her ability to exercise rights protected by the ADA; and complaining that workplace conduct and management practices exacerbated her disability-related limitations; and opposing conduct that she reasonably believed interfered with her rights under the ADA.

84. Defendants knew of Plaintiff's protected activity.

85. Defendants took materially adverse actions against Plaintiff, including interfering with her leave and timekeeping process, declining an effective accommodation, imposing an inflexible return-to-work deadline despite known limitations, disabling her work access, and terminating her employment.

86. Plaintiff's protected activity was a but-for cause of Defendants' adverse actions. The sequence of Plaintiff's complaints, accommodation requests, and opposition to the proposed return arrangement; Defendants' refusal to implement an effective alternative arrangement; the imposed deadline; and the ensuing termination support a causal inference.

87. Defendants' asserted rationale for their actions is pretextual for the reasons alleged above.

88. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered and will continue to suffer damages.

89. Defendants' conduct was intentional and undertaken with malice or reckless indifference to Plaintiff's federally protected rights under the ADA.

<u>COUNT IV</u>
Failure to Provide Reasonable Accommodation
Virginia Human Rights Act, Va. Code § 2.2-3905.1(B)(1)

90. Plaintiff incorporates by reference Paragraphs 1 through 89.

91. Plaintiff was an otherwise qualified person with a disability within the meaning of the Virginia Human Rights Act.

92. Defendants knew of Plaintiff's physical and mental impairments, disability-related limitations, and need for reasonable accommodation.

93. Plaintiff requested reasonable accommodations to enable her to perform work, including a part-time or otherwise modified return-to-work schedule, additional time for analytical work, breaks, time for medical care, a different management or reporting arrangement, less demanding work, temporary assignment, reassignment, or another effective work arrangement.

94. Defendants refused to provide an effective reasonable accommodation. Although Disability and Leave Services approved certain limited measures, Defendants declined the provider-supported management-related arrangement and did not identify or implement another effective alternative arrangement that would permit Plaintiff to return to work while addressing the known disability-related barrier.

95. Defendants cannot demonstrate that the requested or available alternative accommodations would have imposed an undue hardship.

96. As a direct and proximate result of Defendants' unlawful discriminatory practice, Plaintiff suffered and will continue to suffer damages.

COUNT V
Failure to Engage in a Timely, Good-Faith Interactive Process
Virginia Human Rights Act, Va. Code § 2.2-3905.1(B)(5)

97. Plaintiff incorporates by reference Paragraphs 1 through 96.

98. Plaintiff requested accommodations pursuant to Va. Code § 2.2-3905.1, and Defendants had notice of Plaintiff's disability-related limitations and need for accommodation.

99. Defendants were required to engage in a timely, good-faith interactive process with Plaintiff to determine whether the requested accommodations were reasonable and, if a requested accommodation was determined not to be reasonable, to discuss alternative accommodations that could be provided.

100. Defendants failed to engage in that required process by, among other things, failing adequately to discuss and evaluate the provider-supported alternatives Plaintiff identified; limiting the alleged vacancy search to Plaintiff's current business area; failing to identify or assess a part-time return, alternative reporting arrangement, temporary assignment, less demanding work, or other effective alternative; imposing an August 12, 2024 return-to-work deadline; and terminating Plaintiff before identifying or implementing an effective alternative accommodation.

101. As a direct and proximate result of Defendants' unlawful discriminatory practice, Plaintiff suffered and will continue to suffer damages.

COUNT VI
Requiring Leave When Another Reasonable Accommodation Could Be Provided
Virginia Human Rights Act, Va. Code § 2.2-3905.1(B)(4)

102. Plaintiff incorporates by reference Paragraphs 1 through 101.

103. Plaintiff was an otherwise qualified person with a disability whose known limitations required reasonable accommodation.

104. Defendants required Plaintiff to remain on leave or return under Defendants' selected arrangement even though Plaintiff and her providers identified potentially effective alternatives, including a part-time or modified return, alternative reporting arrangement, less demanding work, temporary assignment, reassignment, or other work arrangement.

105. Defendants failed adequately to evaluate whether another reasonable accommodation could be provided before requiring Plaintiff to remain on leave and, ultimately, terminating her employment.

106. As a direct and proximate result of Defendants' unlawful discriminatory practice, Plaintiff suffered and will continue to suffer damages.

COUNT VII
Retaliation for Requesting or Using Reasonable Accommodation
Virginia Human Rights Act, Va. Code § 2.2-3905.1(B)(2)

107. Plaintiff incorporates by reference Paragraphs 1 through 106.

108. Plaintiff requested and used reasonable accommodations and engaged in protected activity by communicating disability-related limitations, submitting provider documentation, requesting a part-time and modified return-to-work arrangement, opposing ineffective proposed measures, and complaining that management conduct and the accommodation process aggravated her disability-related limitations.

109. Defendants knew of Plaintiff's protected activity.

110. Defendants took adverse action against Plaintiff because she requested or used reasonable accommodation, including interfering with the leave and timekeeping process, declining an effective accommodation, imposing an inflexible return-to-work deadline despite known limitations, disabling her work access, and terminating her employment.

111. As a direct and proximate result of Defendants' unlawful discriminatory practice, Plaintiff suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor against Defendants and award compensatory, punitive, equitable, and statutory relief in an amount believed to exceed ONE MILLION DOLLARS ($1,000,000.00), together with the following relief:

A. Declare that Defendants violated the ADA;

B. Declare that Defendants violated the Virginia Human Rights Act, Va. Code § 2.2-3900 et seq.

C. Award back pay, lost benefits, prejudgment interest, and other pecuniary losses;

D. Order reinstatement to an appropriate position with reasonable accommodation or, if reinstatement is not feasible, award front pay;

E. Award compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, damage to work record and professional reputation, and other nonpecuniary losses, to the extent authorized by law;

F. Award punitive damages, to the extent authorized by law;

G. Award reasonable attorney's fees, litigation expenses, and costs under 42 U.S.C. § 12205, the Virginia Human Rights Act, and other applicable law;

H. Award appropriate injunctive and equitable relief; and

I. Award such other and further relief as the Court deems just and proper under the ADA, the Virginia Human Rights Act, and other applicable law.

DEMAND FOR JURY TRIAL

Pursuant to Fed. Rule Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**HEATHER K. TEAGUE**

By: /s/ Scott G. Crowley
Scott G. Crowley
Virginia Bar No. 31216
Attorney for Heather K. Teague
Crowley & Crowley, P.C.
4870 Sadler Road, Suite 300
Glen Allen, VA 23060
Phone: (804) 205-5010
Fax: (804) 800-4243
E-mail: scrowley@crowleyandcrowley.com